**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2466-23

WAYNE LATIMORE,

    Plaintiff-Appellant,

v.

NEW JERSEY AMERICAN
WATER COMPANY,

    Defendant-Respondent,

and

STATE OF NEW JERSEY and
NEPTUNE TOWNSHIP,

    Defendants.

_____

Submitted April 28, 2025 – Decided June 10, 2025

Before Judges Gummer, Berdote Byrne, and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1065-22.

Lawrence S. Reynolds, attorney for appellant.

Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys for respondent (Michael T. Kearns, of counsel and on the brief).

PER CURIAM

In this personal-injury action, plaintiff appeals the trial court's grant of summary judgment to defendant New Jersey-American Water Company, Inc.,[1] dismissing his negligence claim. We affirm because plaintiff has failed to establish defendant breached a duty owed to him to survive summary judgment.

### I.

On September 18, 2020, plaintiff was proceeding in the westbound lane of Route 33 in Neptune Township when his vehicle ran over a cast-iron water main cap, rupturing his driver's-side tire. The police report from the accident indicated "the water main cap was dislodged and located on the eastbound side of [Route] 33. . . . [The New Jersey Department of Transportation] and [defendant] were both notified."

---

[1] In the complaint, plaintiff identified this party as New Jersey American Water Company. In its answer, New Jersey-American Water Company, Inc., stated it had been improperly pleaded as New Jersey American Water Company. Because the other defendants named in the complaint did not participate in this appeal, we refer to this defendant as "defendant" in this opinion for ease of reading.

A-2466-23

In his complaint[2] plaintiff alleged he suffered several injuries due to this incident. Plaintiff further alleged defendant had installed, maintained, controlled, or regulated water mains and covers on the roadway where the accident occurred, and plaintiff's injuries were the direct and proximate result of defendant's negligence.

During discovery, plaintiff deposed the senior manager of field operations for defendant ("corporate witness"). He testified he was not aware of any history of issues with the cap in question and indicated Neptune Township Police had not previously reported that this cap had become dislodged. Notwithstanding that testimony, the corporate witness acknowledged there had been instances where other caps had become dislodged by snowplows and cars driving over them. He testified that because of this possibility, defendant would perform routine inspections of the caps every "two or four years," depending on the size of the cap. He also testified inspections were made every time defendant was notified, either by the police, customers, or any other eyewitness, that a cap was loose. During this deposition, plaintiff did not inquire about the frequency of defendant's inspection of the cap in question, whether this cap had become

---

[2] Plaintiff initially named the State of New Jersey and Neptune Township as defendants; default was entered against the State, and plaintiff's complaint was dismissed with prejudice as to Neptune Township.

previously dislodged in the past, or the date of the last inspection for this cap. Additionally, plaintiff failed to provide any opposing evidence—lay or expert—opining on the efficacy of defendant's inspection frequency and maintenance of its caps in general.

Defendant moved for summary judgment, arguing "there is no evidence of how long the water valve cap/lid was off the opening, what caused the cap/lid to be removed, and no evidence that [defendant] had notice that the cap/lid was removed from the water valve opening." In opposition, plaintiff contended that defendant's witness had "acknowledge[d] that the caps do come out of their receptacle for various reasons, including cars running over them, but the water company considered no policy for protecting this from happening or locking the water caps." Plaintiff further argued defendant was "on notice of the hazardous, dangerous conditions, which was entirely known and foreseeable that the caps come out onto the roadway, creating a potentially dangerous situation for traveling vehicles." Plaintiff contended defendant was on notice of the problem because it did not "consider any safety" for the caps and the caps do not screw in or lock.

Despite stating "[e]ssentially, this is a claim for strict liability," the trial court in its oral opinion analyzed the case pursuant to negligence principles and

A-2466-23

granted defendant's motion, finding "there is no evidence" defendant breached

a duty owed to plaintiff.  With respect to defendant's practice of inspecting its

caps, the court reasoned:

> [t]here is no testimony in the record indicating that [defendant] failed to conduct those inspections or those inspections were flawed, or that the timing of those inspections is improper, or that whatever means they used or method they employed to devise the type of inspection, the timing of the inspections or the amount of inspections were improper.
>
> . . . .
>
> [T]here is no evidence that [defendant's] determination that these caps would be inspected every two to four years, as opposed to any other time period, or that the nature and manner of inspection was faulty, or that this cap was not inspected as it was supposed to be within their two to four-year guideline.

The judge also addressed plaintiff's concern over a lack of locking mechanisms

on defendant's caps:

> [t]here is no expert who has testified or provided an opinion that having [a locking] mechanism on any of these caps was either feasible, practical, possible or, again, efficacious.  Without such testimony, you can't assume that such is the case.  That is the role of an expert, and it does not exist in this case.

This appeal followed.

In reviewing these arguments on appeal, we are guided by familiar principles. On a summary judgment motion, a court must view the motion record in a light most favorable to the non-moving party, here plaintiff. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528–29 (1995); see also R. 4:46-2(c). To survive summary judgment, the opposing party must produce evidence that creates a genuine issue of material fact, and "[c]onclusory and self-serving assertions by one of the parties are insufficient to overcome the motion." Vizzoni v. B.M.D., 459 N.J. Super. 554, 567 (App. Div. 2019). We apply the same legal standards on appeal and review a grant of summary judgment de novo. Statewide Ins. Fund v. Star Ins. Co., 253 N.J. 119, 124-25 (2023). Furthermore, because questions of the presence or absence of a legal duty inherently entail issues of law, we likewise assess those issues de novo. S.V. v. RWJ Barnabas Health, Inc., 481 N.J. Super. 86, 100 (App. Div. 2025).

As an initial matter, we disagree with the trial court that this is a case of strict liability. Generally, strict liability is recognized only in limited situations, such as those involving abnormally dangerous activities, products liability claims, or certain scenarios involving wild or abnormally dangerous animals. See generally Restatement (Third) or Torts: Liab. for Physical & Emotional

Harm §§ 20-23 (Am. L. Inst. 2010) (discussing strict liability as to abnormally dangerous activities and scenarios involving wild or abnormally dangerous animals); Whelan v. Armstrong Int'l, Inc., 242 N.J. 311, 331 n. 5 (2020) ("At common law, a product-liability action could rest 'on grounds of negligence, strict liability, or both.'" (quoting James v. Bessemer Processing Co., 155 N.J. 279, 296 (1998))).

"In determining whether an activity is abnormally dangerous, the following factors are to be considered:  (a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes."  State, Dep't of Env't Prot. v. Ventron Corp., 94 N.J. 473, 491-92 (1983). (quoting Restatement (Second) of Torts § 520 (Am. L. Inst. 1977)).

"The [Products Liability Act, N.J.S.A. §§ 2A:58C-1 to -11 ("PLA")], is intended to protect users from harm caused by defective products by 'establish[ing] clear rules' in 'actions for damages for harm caused by products.'"

Sun Chem. Corp. v. Fike Corp., 243 N.J. 319, 333 (2020) (second alteration in original) (quoting N.J.S.A. 2A:58C-1(a)). "Specifically, the PLA imposes liability upon the manufacturer or seller for a product's manufacturing defects, warning defects, and design defects." Ibid. (quotation marks omitted) (citation omitted).

Not only do the facts of this case distinguish it from one sounding in strict liability, but plaintiff's complaint, argument before the trial court, and brief on appeal all seek recovery on the theory of negligence, not strict liability. And plaintiff did not plead a claim under the PLA. To prove a claim of negligence, a plaintiff must demonstrate: (1) a duty of care, (2) that the duty has been breached, (3) proximate causation, and (4) injury. Townsend v. Pierre, 221 N.J. 36, 51 (2015). A plaintiff bears the burden of proving negligence; it is never presumed. Khan v. Singh, 200 N.J. 82, 91 (2009); see also Prioleau v. Kentucky Fried Chicken, Inc., 434 N.J. Super. 558, 570 (App. Div. 2014) (explaining that "[p]roof of a fall alone would not be adequate to create an inference of negligence"). An inference of negligence cannot be based upon a foundation of pure conjecture or speculation and instead must be supported by competent proof in the record. Buckelew v. Grossbard, 87 N.J. 512, 525 (1981). A plaintiff must prove by a preponderance of the evidence: (1) defendant's actual or

constructive notice of a dangerous condition; (2) lack of reasonable care by defendant; (3) proximate causation of plaintiff's injury; and (4) damages. Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 434 (1993).

In applying these ordinary negligence principles here, plaintiff has no viable cause of action on this record. The relevant inquiries on appeal are whether defendant had actual or constructive notice of a dangerous condition and whether it exercised a reasonable amount of care.

An entity breaches its duty of care owed to a plaintiff when its conduct "falls below a standard recognized by the law as essential to the protection of others from unreasonable risk of harm." Franco v. Fairleigh Dickinson Univ., 467 N.J. Super. 8, 25 (App. Div. 2021) (quoting Marshall v. Klebanov, 378 N.J. Super. 371, 378 (App. Div. 2005), modified and remanded by 188 N.J. 23 (2006)).

The proofs marshalled by plaintiff are inadequate to provide a foundation supporting a cause of action for negligence. The trial court correctly indicated plaintiff failed to bring forth any evidence creating a genuine issue of material fact as to defendant's breach of a duty owed to plaintiff. We agree with the trial court that plaintiff has not provided any evidence defendant's maintenance and inspection of the cap at issue was below any recognized standard of care.

9

Plaintiff has provided no expert testimony challenging defendant's inspection or maintenance procedures, and plaintiff has provided no evidence suggesting the cap at issue did not undergo the routine inspections defendant contends occur for every cap, an inquiry plaintiff could have made while deposing defendant's corporate witness.

Moreover, even if we assume, for the sake of discussion, plaintiff had established that a dangerous condition existed, the critical element of actual or constructive notice of the dangerous condition is not substantiated by the evidence. There is no evidence defendant had any actual notice the cap had become dislodged or how long the cap had been on the side of the road. Moreover, the corporate witness testified when defendant is notified a cap is loose, it immediately inspects that cap. He testified defendant did not have actual notice of any issue with the cap subject to this litigation before plaintiff's incident—whether it be by police report, customer, eyewitness, or otherwise— and plaintiff provided no evidence challenging this contention.

Instead, plaintiff asserted defendant was on constructive notice because it was aware some other caps have become dislodged in the past, without exploring the frequency with which that occurred. This assertion fails to establish constructive notice, as mere foreseeability of a potential issue, without more,

10

cannot provide the requisite constructive notice.  Compare Robinson v. Vivirito, 217 N.J. 199, 212 (2014) ("Foreseeability requires a determination of whether the defendant was reasonably able to ascertain that his allegedly negligent conduct could injure the plaintiff in the manner it ultimately did." (emphasis added)), with Jeter v. Sam's Club, 250 N.J. 240, 251 (2022) ("'A defendant has constructive notice when the condition existed "for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent."'" (quoting Troupe v. Burlington Coat Factory Warehouse Corp., 443 N.J. Super. 596, 602 (App. Div. 2016))).

In short, based on our de novo review of the record presented, we conclude the trial court correctly granted summary judgment and that plaintiff did not establish the existence of any genuine issues of material fact that reasonably could support the negligence claim defendant pleaded in his complaint.  Any further arguments plaintiff advances to set the court's ruling aside lack sufficient merit to warrant discussion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2466-23